## Union League *v.* Ransley, Appellant.

*Taxation—Mercantile tax—Clubs—Sale of cigars—Restaurant—Pool room—Acts of May 2, 1899, P. L. 184, April 25, 1907, P. L. 117, and May 25, 1907, P. L. 244.*

A social club is not required under the Act of May 2, 1899, P. L. 184, to pay a mercantile tax, as vendor of goods, wares and merchandise, becauses it purchases cigars and distributes them among its members in the manner customary in such clubs; nor is it required to pay a tax under the Act of April 25, 1907, P. L. 117, because it carries on a restaurant; nor to pay a tax under the Act of May 25, 1907, P. L. 244, as a keeper of a billiard or pool room for purposes of profit.

Argued Oct. 19, 1908. Appeal, No. 113, Oct. T., 1908, by defendant, from decree of C. P. No. 5, Phila. Co., March T., 1908, No. 844, on bill in equity in case of The Union League of Philadelphia v. Harry C. Ransley et. al., Mercantile Appraisers. Before RICE, P. J., HENDERSON, MORRISON, and HEAD, JJ. Affirmed.

Bill in equity for an injunction. Before MARTIN, P. J., and STAAKE, J.

The opinion of the Superior Court states the case.

*Error assigned,* was decree awarding injunction.

Murdoch Kendrick, for appellants.—The three acts of assembly under which the transactions performed by The Union League are alleged to be taxable—are clear, precise and unambiguous in terms. The legislature has not limited the applicability of the general terms of these acts of assembly to transactions other than such as the vender, dealer, individual or corporation regards as incidental.

It is submitted that the case at bar does not represent equitable divisions of property of tenants in common among themselves, but that the only alternative is left to say that there is a repetition of sales by a corporate entity to its members constituting a business in fact and that all tests depending for their premises on the form, description, surroundings or intention of

the individual or corporate vender, dealer or keeper are irrelevant in deciding whether what in fact done is but a private form of retail business.

In view of the plain purpose of the legislature to tax generally in fairness to all, it is respectfully submitted that the honorable judge of the lower court may have fallen into error in using the above "tests" to interpret the acts of assembly in question as regards their applicability to appellee: Philadelphia v. Ridge Ave. Pass. Ry. Co, 102 Pa. 190; Cornwall v. Todd, 38 Conn. 433.

A revenue law is not to be strictly construed, but rather the contrary so as to attain the ends for which it was enacted: U. S. v. Hodson, 77 U. S. 395; Smythe v. Fiske, 90 U. S. 374; Union Pass. Ry. Co. v. Philadelphia, 83 Pa. 429; Vicksburg, etc., R. R. Co. v. Dennis, 116 U. S. 655 (6 Sup. Ct. Repr. 625); North Missouri R. R. Co. v. Maguire, 87 U. S. 46; Minot v. Philadelphia W. & B. R. R. Co., 85 U. S. 206; New Orleans City, etc., R. R. Co. v. New Orleans, 143 U. S. 192 (12 Sup. Ct. Repr. 406) People v. Cook, 148 U. S. 397 (13 Sup. Ct. Repr. 645); Keokuk, etc., R. R. Co. v. Missouri, 152 U. S. 301 (14 Sup. Ct. Repr. 592).

To relieve an appellee from liability to taxation under the acts would be to work a clear discrimination among members of the same class, profession or business, and is in violation of Art. IX, secs. 1 and 2, of the constitution of Pennsylvania: Knisely v. Cotterel, 196 Pa. 614; Com. v. Muir, 180 Pa. 47; Com. v. Canal Co., 123 Pa. 594; Com. v. Bailey, Banks & Biddle Co., 20 Pa. Superior Ct. 210; State v. McBrayer, 98 N. C. 619.

The fact that an individual, partnership, corporation or other group of persons associated together, fit their establishments with such fixtures that the expense of maintaining such overbalances the profits made on "conveniences" sold to their members or guests, does not render such sales less a business of vending such articles, where the prices do net a profit on what is sold.

The fact that the incorporated group is associated together primarily for other than business purposes is not a relevant fact in determining whether what is incidentally conducted is in fact a business: Com. v. Tierney, 29 W. N. C. 194; Klein v. Living-

ston Club, 177 Pa 224; Mohrman v. State, 105 Ga. 709; Chicago v. Netcher, 183 Ill. 104; South Shore Country Club v. People, 228 Ill. 75.

The mere fact that a group of persons choose to make the primary object of their association such as is non-remunerative, cannot determine the quality of the act or acts done "incidental" or supplementary to such: Creveling v. Wood & Leman, 95 Pa. 152; Bowen v. Burk, 13 Pa. 146; Com. v. Tierney, 29 W. N. C. 194.

The word "business" is of large signification and in its broadest sense includes nearly all the affairs in which either an individual or a corporation can be actors: People v. Tax Commissioners, 23 N. Y. 242; In Re Alabama, etc., R. R. Co., 9 Blatch. (U. S.) 390; Bloom v. Richards, 2 Ohio St. 387.

The Union League is taxable as a vender in cigars. The following are cases where social clubs were held taxable for business conducted where such was alleged as a distribution among members or an incident: Kentucky Club v. Louisville, 92 Ky. 309 (17 S. W. Repr. 743); People v. Soule, 74 Mich. 250 (41 N. W. Repr. 908); Nogales Club v. State, 69 Miss. 218 (10 So. Repr. 574); State v. Essex, 53 N. J. L. 99 (20 Atl. Repr. 769); State v. Neis, 108 N. C. 787 (13 S. E. Repr. 225); State v. Shumate, 44 W. Va. 490 (29 S. E. Repr. 1001); U. S. v. Giller, 54 Fed. Repr. 656; People v. Andrews, 115 N. Y. 427 (22 N. E. Repr. 358); Com. v. Tierney, 29 W. N. C. 194; Com. v. Steffner, 2 Pa. Dist. Repr. 152.

*W. W. Porter*, of *Porter, Foulkrod & McCullach*, for appellee, cited: Klem v. Livingston Club, 177 Pa. 224; Com. v. Carey, 151 Pa. 368.

Opinion by Head, J., July 14, 1909:

The Union League of Philadelphia is a corporation duly existing under the laws of the commonwealth. Created primarily for the purpose of enabling its members to more effectively aid the national government in the dark days of civil war, it has continued its existence, through the peaceful years that have followed, chiefly to promote those relations among its

members and to furnish to them those conveniences and comforts that seem to have become a necessary incident in the development of the social life of modern civilized man. It owns a large and valuable property on Broad street in the city of Philadelphia. It provides commodious rooms and halls, well lighted and heated, in which its members may assemble. Their walls are lined with pictures and statuary, calculated not only to keep alive the memory of the epoch in which the organization had its birth, but also to create in the minds of its members a love for the beautiful in art and an appreciation of the refinements of life. It furnishes to its members food, drink and amusement in the variety demanded by its extensive membership, and is doubtless, as the court below finds, one of the most widely known and best maintained institutions of its kind in the entire country.

The Act of May 2, 1899, P. L. 184, is entitled: "An Act to provide revenue by imposing a mercantile license tax on venders of or dealers in goods, wares and merchandise, and providing for the collection of said tax." Its first section declares: "That from and after the passage of this act, each retail vender of or retail dealer in goods, wares and merchandise, shall pay an annual mercantile license tax," etc. The eleventh section provides that "each dealer who comes under the provisions of this act shall cause to be placed permanently at the entrance of his or their place of business a sign describing the business in which the party is engaged, with his or their name or names upon the same." The appellants, who were the mercantile appraisers for the county of Philadelphia, conceiving that, in supplying cigars to its members, the Union League was a vender of or dealer in merchandise within the meaning of the act, served a notice upon the officers of the club requiring them to make such returns, relating to its distribution of cigars among its members, as would enable the appraisers to fix the amount of mercantile tax it should pay. The appellee thereupon filed this bill praying for an injunction to restrain the appraisers from the threatened action. This bill was so proceeded in that the learned court below awarded a permanent injunction, and from its decree this appeal is taken.

The act of 1899 did not by any means inaugurate a new policy of taxation in this state. It was but the last of a long series of legislative enactments begun nearly a century ago, all of which were aimed at the taxation of the business of venders or dealers in merchandise. For the greater portion of that long period of time, social clubs have been in existence, some of them incorporated by special acts of the legislature before the adoption of the new constitution, and a multitude of them, since that time and the passage of the act of 1874, by the courts under the provisions of the last-named act. Of the existence of such clubs, the modes in which they were created, and the manner in which they fulfilled the purposes of their creation, the legislature could not have been ignorant. In no one of the many acts of assembly providing for the taxation of venders of merchandise has the legislature ever indicated its intention to include a social club as a member of the class intended to be taxed. Had there been at any time a popular demand for the taxation of any of those things which are the well-known incidents of club life, it is only fair to presume that the legislature would have responded. When, therefore, during such a long period of time, a line of legislative acts, dealing largely with the same subject-matter, has been understood to adopt a policy seemingly acquiesced in by the legislature and the people, our courts naturally would be and ought to be slow in declaring that the intention of the legislature, in the last act of a long series, was different from that commonly understood and accepted during all the preceding years.

It seems to us, however, that our conclusion need not be rested upon such general considerations, because it is clear that unless the appellant can be regarded as a "retail vender of or retail dealer in goods, wares and merchandise," to wit: cigars, it is not within the purview of the act of 1899. That it is not such a vender or dealer, we believe to have been authoritatively decided by our own Supreme Court.

In Klein v. Livingston Club, 177 Pa. 224, a case was presented which, as to the vital point in question, was exactly similar to the one now before us. In that case the defendant was a club organized for social purposes. It owned its own property and

furnished to its members food, liquor, and such other things as their comfort or convenience required. Its method of purchasing a stock of liquor and distributing it among those of its members who desired to use it was, in no material respect, different from that adopted by the appellee in the purchase of a stock of cigars and the distribution of the same among its members. If such a method of furnishing liquor to its members, or distributing it among them according to their wants, constituted a sale of the liquor, then the club was violating the act of assembly commonly known as the Brooks Law. In an elaborate opinion by the late Mr. Justice Dean, wherein the whole subject was fully discussed, the following language was used: "The purpose of the whole system is to distribute the advantages, comforts and luxuries of the club among the members, so that there shall not be unequal contributions to the treasury which purchases them. They are all owners of the property when purchased, in equal shares; and if a division were then made, each would be entitled to an equal share of the liquor; but one consumes his share and that of others who do not drink liquor, and he puts back into the common treasury the value of the others' shares; therefore, although by consumption the division is not equal, yet it is made equal by the contribution to the treasury; that has neither lost nor gained, consequently the contribution is equitable. Does this constitute a sale? We think not; there is no element of bargain, only a method of distribution of the common property."

Many cases are there cited tending to show that, whilst the decisions in all jurisdictions have not been uniform, the weight of opinion has been with the view thus adopted by our own courts. It is clear that if the present attempt was aimed at the distribution of liquor among its members by the appellee, the question would be res adjudicata. If, under such circumstances, there would be no sale of liquor, it is impossible to see how it can be successfully contended that there is a sale of cigars, and if there be no sale of cigars, it follows that the appellee is not a vender of or dealer in cigars within the meaning of the act of assembly. It is true that in the case referred to, it appeared from the pleadings that the club received no profit on the

liquors consumed by its members. This we do not regard as a controlling question. The merchant, whose ventures prove unprofitable, must pay his mercantile tax as well as his competitor who reaps a golden harvest by virtue of his superior energy or foresight. And it is apparent from the testimony in this case that the appellee reaps no profit because of its handling of cigars. It is true that it appears, from the reports made to the governing body of the receipts and expenditures incident to the handling of cigars, the receipts exceeded in amount the charges specially set over against them, but it also appears that this resulted only in a paper profit rather than a real one, because under the system of bookkeeping, adopted by the club for the guidance and information of its officers, no charges were made for many important items, such as light, heat, floor space, service, etc., that would necessarily attend the business of an ordinary dealer in such articles. We are constrained to hold, therefore, under the authority of the case cited, that the appellant is not a vender of or dealer in merchandise within the meaning of the act of 1899, and is not subject to the mercantile tax imposed on such dealers by that act.

The same line of reasoning, we think, must necessarily lead us to the conclusion, under the facts of this case, that the Union League is not "engaged in carrying on a restaurant, eating house, café, or quick lunch business" within the meaning of the Act of April 25, 1907, P. L. 117, nor is it "the keeper of a billiard or pool room for purposes of profit" within the meaning of the Act of May 25, 1907, P. L. 244. A study of these various acts and of the history of such legislation would enable us, we think, to discover a number of reasons supporting such a conclusion, but no good purpose would be subserved by a lengthy discussion of the question. Indeed, the opinion of the learned court below is so complete and convincing along these lines that it is doubtful if anything of value has been added to it.

Decree affirmed.