Artemie **KALMAKOFF**, Appellant,

v.

**STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMISSION**, Appellee.

No. 7767.

Supreme Court of Alaska.

March 29, 1985.

---

Craig J. Tillery and Wilson A. Rice, Reese, Rice & Volland, P.C., Anchorage, for appellant.

Sarah Forbes, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

Artemie Kalmakoff lives in Ivanof Bay, a village on the southern coast of the Alaska Peninsula. His application for a limited entry permit for the Chignik purse seine salmon fishery, initially filed in 1975, was denied by the Commercial Fisheries Entry Commission (CFEC) in 1981. The commission concluded that Kalmakoff was only entitled to seventeen points, three short of the number needed for a permit to the Chignik fishery. The superior court affirmed the CFEC's determination, but this court recently reversed portions of the commission's findings and remanded the

matter for a new administrative hearing. See Kalmakoff v. State, 693 P.2d 844 (Alaska, 1985).

Throughout this litigation, up until the superior court's affirmation, Kalmakoff had held and renewed an interim-use permit for the Chignik purse seine fishery. After the superior court's affirmation, the commission, in accordance with its regulation 20 AAC 05.550(j), declined to issue Kalmakoff an interim-use permit pending this court's decision. The question before us here is whether 20 AAC 05.550(j) is consistent with the governing statutes. We hold that it is not.

20 AAC 05.550(j) provides in full:

An applicant who has been denied an entry permit and subsequently appeals that determination to the superior court on the basis of a wrongful denial of points that could have been awarded by the commission under its regulations, may be issued an interim-use permit pending final judicial determination of the merits of that appeal if the applicant has exhausted all administrative remedies regarding the issues on appeal. An applicant denied an entry permit who subsequently appeals that determination on a basis other than wrongful denial of points will not be issued an interim-use permit. *An applicant unsuccessful in superior court will not be issued an interim-use permit on further appeal.* (Emphasis furnished.)

The legislature has provided that the CFEC has the authority to issue interim-use permits in certain specified situations. If, in a given fishery, the "maximum number of entry permits" has not been established under AS 16.43.240, and issuance of permanent permits under AS 16.43.270 has not yet begun, the commission must issue interim-use permits "to all applicants who can establish their present ability to participate actively in the fishery." AS 16.43.210(a). Additionally, if the "maximum number" of permanent permits has not yet been issued, the commission may issue interim-use permits to applicants who may

later become eligible for an entry permit. AS 16.43.210(b).[1]

■ AS 16.43.220(a) specifies the terms and conditions of interim-use permits. It provides as follows:

The commission shall adopt regulations specifying the dates and places of application, the procedures to be followed in renewal of the interim-use permit including the time, place of its renewal, and for any other purpose incident to the administration of interim-use permits for that fishery. *An interim use permit shall expire upon the final determination of the holder's eligibility for an entry permit.* (Emphasis furnished.)

Kalmakoff argues that a "final determination" within the meaning of this section refers to the determination of the final authority, which is this court. We agree. Unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage. *State v. Debenhan Electric Supply Co.,* 612 P.2d 1001, 1002 (Alaska 1980); *Horowitz v. Alaska Bar Ass'n,* 609 P.2d 39, 41 (Alaska 1980). As commonly understood, final determination means a decision which is not subject to further change. Since this court can reverse both the determination of the commission and the determination of the superior court, we would clearly be modifying the plain meaning of the statutory language if we concluded that either of their decisions was the "final determination."

This interpretation is consistent with and supported by AS 16.43.270(c), which is de-signed to protect the rights of applicants "appealing the findings of an administrative adjudication." [2] The language of this section clearly refers to resolution by this court, since appeals are not resolved in superior court when a party decides to carry the appeal further. The "final determination" language of AS 16.43.220 and "appeals resolved" language of AS 16.43.-270(c) should be congruent, as interim-use permits are issued under AS 16.43.210(b) expressly for the benefit of applicants under AS 16.43.270.

■ Our interpretation of AS 16.43.-220(a) is also consistent with what we perceive to be one of the central policies underlying the Limited Entry Act—to insure that those applicants who would suffer significant hardship if excluded from the fishery are not excluded. Temporary exclusion may be almost as devastating to an individual applicant wrongfully denied a permit as permanent exclusion. We think it is clear that the legislature did not intend the risk and resulting burden of error on the part of an intermediate decision making body to fall upon the applicant.

■ The commission contends, however, that even if "final determination" in AS 16.43.220(a) refers to the decision of this court, it properly denied Kalmakoff an interim-use permit. It claims that AS 16.43.-220(a) only applies to interim-use permits issued under AS 16.43.210, and that that statute does not require it, nor even allow it, to issue any further interim-use permits to Kalmakoff, since the "maximum number" of permits for the fishery has been established and issued. The commission argues that its authority to issue interim-

1. The "maximum number" of permits for a particular distressed fishery is set at the "highest number of units of gear fished in that fishery during any one of the four years immediately preceding January 1, 1973." AS 16.43.240. For the Chignik purse seine fishery that number is 80. 20 AAC 05.320(a)(6). The commission must, however, issue an entry permit to all applicants who would suffer "significant economic hardship" if excluded from the fishery. AS 16.43.250(b); AS 16.43.270(a). In accordance with this mandate, the commission has issued 90 permanent permits for the Chignik purse seine fishery.

2. AS 16.43.270(c) provides:

If, at the time entry permits are issued, some applicants are still appealing the findings of an administrative adjudication under AS 16.43.260, a sufficient number of permits shall be reserved out of the permits to be issued to protect the rights of those applicants, assuming all the appeals will be resolved in favor of the applicants. In the event that all appeals are not resolved in favor of the applicants, the remaining entry permits shall be allocated to the next most qualified applicants as provided in (a) and (b) of this section.

use permits to applicants like Kalmakoff, depends on its own general powers and discretion.

In our view, the commission has misconstrued the relevant statutory provisions in two respects. First, the commission does not have the authority to issue interim-use permits whenever it believes, after balancing the various interests involved, that such an issuance would be equitable. AS 16.43.100, which specifies the general powers of the commission, provides that it shall "issue interim-use permits as provided in AS 16.43.210 and 16.43.220." The commission's discretion is thus limited to that which is outlined in those provisions.

Second, once an interim-use permit is issued pursuant to AS 16.43.210, that permit, if properly renewed, remains valid until a final determination is made.[3] The question, therefore, is not whether the commission had the power to issue interim-use permits under that section at the time of the superior court's ruling. Rather, the relevant time is 1975, when Kalmakoff received his initial interim-use permit.

For the foregoing reasons, we hold the last sentence of 20 AAC 05.550(j) invalid.

**3.** AS 16.43.220(a) gives the commission the power to adopt regulations concerning the procedures (e.g. time and place) for renewal of interim-use permits. Obviously, the power to renew does not include the power to terminate, for the same section also provides that interim-use permits do not expire until a final determination upon the holder's eligibility has been made.