Kungsgaten, Inc. *v.* Philadelphia, Appellant.

344

Argued March 19, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, and JACOBS, JJ. (FLOOD and HOFFMAN, JJ., absent).

*Levy Anderson,* First Deputy City Solicitor, with him *Matthew W. Bullock, Jr.,* Deputy City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for City of Philadelphia, appellant.

*Joseph H. Lieberman,* for appellee.

OPINION BY MONTGOMERY, J., September 16, 1965:

The City of Philadelphia has taken this appeal from an order of the Court of Common Pleas No. 6 of Philadelphia County reversing the decision of the Philadelphia Tax Review Board which had held the appellee liable for the Philadelphia Mercantile License Tax on its gross receipts for the years 1957 to 1959, inclusive.[1]

The facts of the case are not in serious dispute. Kungsgaten, Inc. was organized May 9, 1957, under the Pennsylvania Business Corporation Law with broad powers to transact business, including the right to buy and lease real estate.[2] Thereafter it took title to a certain piece of real estate, being a high-rise apartment house located at 400 South Fifteenth Street in the City of Philadelphia, Pennsylvania, which is its only holding. Immediately after acquiring title it leased the property to Barrington, Inc., which entered into separate leases with the individual tenants. The rental paid by Barrington to Kungsgaten varied each year but was a sum equal to the amount paid by Kungsgaten for taxes, insurance premiums, water and sewer charges and mortgage interest.[3] Mr. Samuel Elgart and Mr. Jules Goldberg own all of the stock of the two

---

[1] This case was originally appealed to the Supreme Court of Pennsylvania but by order filed January 12, 1965, it was remitted to this Court because of the amount in controversy.

[2] The fact that the charter of Kungsgaten, Inc. was amended April 25, 1962 to read, "To invest in improved and unimproved real estate; to repair, to alter, to build and construct; to sell, mortgage, to collect rents providing the parcel consists of one rental and does not require any services such as heat, janitorial and/or any other kind, and to issue a lease for a parcel as an entirety," does not enter into our consideration inasmuch as the taxes forming the basis of this appeal are for 1957, 1958, and 1959.

[3] The lower court said in its opinion that the amount paid to Kungsgaten annually included reimbursements for expenditures made for capital improvements and equipment replacements but the record does not support this fact.

corporations. Mr. Elgart is president and treasurer of Kungsgaten and Mr. Goldberg is secretary. Mr. Goldberg is president of Barrington and Mr. Elgart is secretary-treasurer. Barrington paid the Philadelphia Mercantile License Tax on the gross income it received from the tenants.

The Revenue Commissioner of Philadelphia assessed Kungsgaten for a Mercantile License Tax for the years 1957 to 1959 inclusive, upon the total sum received by it from Barrington, and the Tax Review Board sustained the assessment solely because ". . . Petitioner is a business entity, it being found by the Board that this activity would not be taxable if the property were owned by an individual." Common Pleas Court No. 6 concluded that Kungsgaten was not engaged in business and hence was not subject to the tax.

The reason given by the board falls short of being sufficient for holding Kungsgaten taxable. The corporate activities determine such questions, not the mere possession of a corporate charter. *Ed. McKean Oldsmobile Co. v. Pittsburgh,* 407 Pa. 106, 180 A. 2d 46 (1962); *Philadelphia School District v. Frankford Grocery Company,* 376 Pa. 542, 103 A. 2d 738 (1954).

Whether the activities sought to be taxed are those of a corporation or an individual or group of individuals, they must meet the definition of doing business as intended by the ordinance. This has been held to mean engaging in an activity for "gain or profit", that is, for profit motive. *Philadelphia School District v. Frankford Grocery Company,* supra. The following cases held that proceeds from activities of corporations organized for business purposes were not for a profit motive and for that reason not taxable: *Ed. McKean Oldsmobile Co. v. Pittsburgh,* supra, exchange of automobiles between dealers, to insure availability of desired models; *Jefferson Grocery Company of Pittsburgh*

*v. Pittsburgh School District*, 394 Pa. 110, 145 A. 2d 720 (1958), in which the corporation acted as a purchasing agent for a chain of markets without being motivated to make a profit for itself; *H. J. Heinz Company v. School District of Pittsburgh*, 170 Pa. Superior Ct. 441, 87 A. 2d 85 (1952), service of food to employes in a cafeteria at prices lower than charged in comparable commercial restaurants.

On the other hand we find cases holding' taxable allegedly passive income from investments because the activities of the corporation constituted doing business. *Sun Oil Company v. Tax Review Board*, 417 Pa. 443, 207 A. 2d 855 (1965); *Bankers Securities Corporation v. Philadelphia School District*, 188 Pa. Superior Ct. 463, 149 A. 2d 545 (1959), affirmed, 397 Pa. 413, 155 A. 2d 835 (1959).

Insofar as the proceeds from rentals of real estate are concerned, we find a series of cases that distinguish between renting real estate as a business enterprise and renting it for the purpose of conserving it. In *A. H. Geuting Company v. City of Philadelphia*, 1 Pa. D. & C. 2d 341 (1954), the court exonerated a corporation from the tax because it was conserving its property after having terminated its shoe business, although it dealt directly with its tenants to whom it supplied services. In *Price v. Tax Review Board*, 409 Pa. 479, 187 A. 2d 280 (1963), a sister and her brothers formed a partnership in order to operate an apartment building which they had inherited. Even though they dealt directly with their tenants they were exonerated from the tax because they were not engaged in the business of operating an apartment building. However, in *Tax Review Board v. Brine Corporation*, 414 Pa. 488, 200 A. 2d 883 (1964), a corporation which owned numerous properties was held taxable on several it had leased to others to operate, because that activity was part of the business.

If we were to give the term "doing business" a broad meaning as is done in some of the cases cited by appellant which relate to foreign corporations coming into this Commonwealth, we might well sustain the taxing body in this case. We have no doubt that Messrs. Elgart and Goldberg were utilizing both Kungsgaten and Barrington for profit motives. However, we are here considering the power of taxation which must be plainly and unmistakably conferred. Tax statutes should receive strict construction with all doubts resolved against the taxing body. *Price v. Tax Review Board,* supra, and cases therein cited. Therefore, in the light of the cases previously discussed holding that the profit motive must be in the mind of the one against whom the tax is assessed, not someone else who might benefit from such activity, we conclude that Kungsgaten is holding title without intending to profit thereby, and was not doing business but was conserving the property. Consequently, it was not subject to this tax.

Order affirmed.

WRIGHT, J., concurs in the result.

---

CONCURRING OPINION BY JACOBS, J.:

I concur in the result solely on the ground that the City of Philadelphia has not met its burden of showing that the activity of Kungsgaten, Inc. constitutes doing business within the meaning of this taxing ordinance which defines "Business" as: "The carrying on or exercising *for gain or profit* within the City any trade, business, profession, vocation, or making sales to persons within the City, or any manufacturing, commercial or financial activity, service or business, including but not limited to manufacturers, brokers, wholesale dealers or wholesale vendors, retail dealers or retail vendors." (Emphasis added)